1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    DARRELL F.,[1]                        Case No. 20-cv-06013-SK
                Plaintiff,
8
          v.                               ORDER REGARDING CROSS-
9                                          MOTIONS FOR SUMMARY
     KILOLO KIJAKAZI,                      JUDGMENT
10
                Defendant.                 Regarding Docket Nos. 24, 31
11

12          This matter comes before the Court upon consideration of Plaintiff Darrell F.'s motion for

13   summary judgment and the cross-motion for summary judgment filed by Defendant, the

14   Commissioner of Social Security (the "Commissioner").  Pursuant to Civil Local Rule 16-5, the

15   motions have been submitted on the papers without oral argument.  Having carefully considered

16   the administrative record, the parties' papers, and relevant legal authority, and the record in the

17   case, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the

18   Commissioner's cross-motion for summary judgment for the reasons set forth below.

19                                   BACKGROUND

20          Plaintiff was born on January 23, 1991.  (Administrative Record ("AR") 42, 212.)  On June

21   12, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits,

22   alleging she/he was disabled starting on February 1, 2018.  (AR 15, 35, 212.)

23          On July 11, 2019, Plaintiff, accompanied by counsel, testified at a hearing before the

24   Administrative Law Judge ("ALJ").  (*Id.*)  Plaintiff, vocational expert ("VE") Victoria Rei, and

25   medical expert Ricardo Buitrago, PhD, all testified at the hearing.

26

27          _____

28          [1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure
     5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case
     Management of the Judicial Conference of the United States.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The ALJ found that Plaintiff had the severe impairments of bipolar disorder, persistent depression, post-traumatic stress disorder ("PTSD"), and cannabis dependence.  (AR 17.)  The ALJ determined that Plaintiff's impairments did not meet or equal any listed impairments and that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant can perform simple repetitive tasks, can work with others, can make simple judgments, and could work an 8-hour day.

(AR 18, 19.)  Plaintiff does not have any past relevant work.  (AR 22, 23.)  The ALJ held that, based on the testimony from the vocational expert, Plaintiff could perform the whole range of unskilled work at all levels of exertion.  (AR 23.)  Therefore, the ALJ concluded that Plaintiff was not disabled.  (AR 24.)

Plaintiff alleges that the ALJ erred in his evaluation of Plaintiff's nonexertional limitations for many reasons.  The Court will review Plaintiff's specific arguments below.

## ANALYSIS

### A.    Standard of Review.

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ").  *Reddick*, 157 F.3d at 720.  The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation.  *Id.* at 720-21.

### B.    Legal Standard for Establishing a Prima Facie Case for Disability.

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520.  The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).  However, the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows.  First, the claimant must not be engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 416.920(c).  To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months.  (*Id.*)  Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience.  20 C.F.R. § 20 C.F.R. § 404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant medical and other evidence in the claimant's case record.  20 C.F.R. § 416.920(e).  The RFC measurement describes the most an individual can do despite his or her limitations.  *Id.* § 404.1545(a)(1).  If the claimant has the RFC to perform past relevant work, benefits will be denied.  *See id.* § 404.1520(f).  If the claimant cannot perform past relevant work, the ALJ will proceed to step five.  *Id.*

At step five, the ALJ determines whether the claimant can make an adjustment to other work.  20 C.F.R. § 404.1520(f)(1).  If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.  *Id.* at 404.1520(e) and (g).  There are two ways to make this determination: (1) by the testimony of an impartial VE or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2.  *Id.*

United States District Court
Northern District of California

1    **C.      Weighing Medical Evidence.**

2           For benefits applications filed after March 27, 2017, such as Plaintiff's here, the Social

3    Security Administration's ("SSA") regulations and several Social Security Rulings regarding the

4    evaluation of medical evidence have been amended.  Prior to the current regulations, Ninth Circuit

5    law held that an ALJ must provide clear and convincing reasons to reject a treating or examining

6    physician's uncontradicted opinion and must provide specific and legitimate reasons to reject a

7    treating or examining physician's contradicted opinion.  *See Trevizo v. Berryhill*, 871 F.3d 664,

8    675 (9th Cir. 2017) (citations omitted).  However, under the current regulations, "the

9    Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this

10   includes giving controlling weight to any medical opinion.'"  *V.W. v. Comm'r of Soc. Sec.*, 2020

11   WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also P.H.*

12   *v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (citation omitted) (noting that the 2017

13   regulations eliminate the deference given to treating physicians for claims filed after March 27,

14   2017).  Some district courts have continued to apply the "clear and convincing" and "specific and

15   legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's] reasoning."

16   *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10,

17   2020).  Others, including courts in this district, have not.  *See, e.g.*, *V.W.*, 2020 WL 1505716, at

18   *13; *Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021).

19          Plaintiff argues that the Court should still apply the standards adopted by the Ninth Circuit

20   which provide weight to medical opinions depending in part on whether they are offered by

21   treating, examining, or non-examining (reviewing) professionals.  *See, e.g.*, *Ryan v. Commissioner*

22   *of Social Security*, 528 F.3d 1194, 1198 (9th Cir. 2008).  However, regulatory agencies such as the

23   SSA have broad authority to interpret the statutes they are charged with applying, as long as their

24   regulations are not arbitrary and capricious or contrary to the statute, and courts must defer to

25   validly adopted regulatory interpretations.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,

26   467 U.S. 837 (1984); *see also Barnhart v. Walton*, 535 U.S. 212, 222 (2002) (granting deference

27   under *Chevron* to SSA interpretation of duration requirement for disability benefits.)  Because

28   agencies are experts in the field, an agency's contrary interpretation will supersede a prior judicial

4

United States District Court
Northern District of California

1  construction unless the "prior court decision holds that its construction follows from the

2  unambiguous terms of the statute and thus leaves no room for agency discretion."  *Nat'l Cable &*

3  *Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

4       The Ninth Circuit's determination of the treating physician rule, and the corollary weight it

5  attributed to treating, examining, or non-examining medical providers was not derived from the

6  unambiguous terms of the statute.  *See Agans*, 2021 WL 1388610, at *6 (describing the source and

7  evolution of the treating physician rule).  "The treating physician rule . . . was originally developed

8  by Courts of Appeals as a means to control disability determinations by administrative law judges

9  under the Social Security Act."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829

10  (2003).  When the SSA later adopted regulations approving and formalizing use of the rule in the

11  Social Security disability program, the agency noted that "[n]one of the circuit courts of appeals

12  has held that its treating physician rule is required by the Act or Constitution."  *See* Final Rules,

13  Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 (1991).

14  Therefore, the SSA's new regulations regarding the examination of and weight given to medical

15  providers supersedes the Ninth Circuit's treating physician rule.  The Court will address the ALJ's

16  evaluation of the medical opinions in accordance with the new regulations.

17       Under the current regulations, the Commissioner must evaluate the persuasiveness of all

18  medical opinions based on: (1) supportability; (2) consistency; (3) relationship with the claimant;

19  (4) specialization; and (5) other factors, such as "evidence showing a medical source has

20  familiarity with the other evidence in the claim or an understanding of our disability program's

21  policies and evidentiary requirements."  20 C.F.R. § 416.920c(a), (c)(1)-(5).  "The two 'most

22  important factors for determining the persuasiveness of medical opinions are consistency and

23  supportability,' which are the 'same factors' that 'form the foundation of the current treating

24  source rule.'"  *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01

25  at 5853).  With respect to "supportability," the new regulations provide that "[t]he more relevant

26  the objective medical evidence and supporting explanations presented by a medical source are to

27  support his or her medical opinion(s) or prior administrative medical finding(s), the more

28  persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §

5

1    416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent

2    a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

3    medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

4    or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

5         Explanation of the consideration of the other factors is optional, except in cases where two

6    or more opinions are equally well-supported and consistent with the record.  *Id.*  While the new

7    Social Security "regulations eliminate the 'physician hierarchy,' deference to specific medical

8    opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she]

9    considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical

10   opinions.'"  *Christopher Charles A. v. Comm'r of Soc. Sec.*, 2020 WL 916181, at *2 (W.D. Wash.

11   Feb. 26, 2020) (citing 20 C.F.R. §§ 404.1520c(a) and (b) (1), 416.920c(a) and (b) (1)).

12        Here, the ALJ found the opinions of non-examining psychological consultants Eugene

13   Campbell, Ph.D., and Peter Bradley, Ph.D., and the opinions of medical expert, Ricardo Buitrago,

14   Psy.D., persuasive, but found that the opinions of the opinion of examining psychologists Lorraine

15   Schnurr, Ph.D., and Lara T. San Pedro, Psy.D., unpersuasive.  (AR 21-22.)  Plaintiff contests these

16   findings.

17        **1.    Buitrago.**

18        Buitrago testified at the hearing that he reviewed the exhibits in the record 14E through

19   11F and then quickly reviewed the additional 16-page exhibit 12F before the hearing.  (AR 35-36.)

20   Buitrago stated that what he saw in Exhibit 12F at the two service dates would not affect his

21   testimony.  (AR 36.)  Buitrago noted that he did not see any records of any ongoing psychological

22   treatment records, ongoing "med" management records, episodes of decompensation, ongoing

23   medication or psychiatric "med" management records, or mental capacity reports from any

24   providers.  (AR 37.)  Although Plaintiff was recommended to engage in psychotherapy, Plaintiff

25   did not start seeing anyone until April or May of 2019.  (*Id*.)

26        Buitrago concluded that Plaintiff did not present with an impairment which met or equaled

27   a listing under the above mental health disorders.  (AR 36.)  Buitrago evaluated Plaintiff under

28   criteria B as follows: his ability to understand and remember applied information was mild to

United States District Court
Northern District of California

1    moderately impaired, interacting with others was moderately impaired, concentration, persistence

2    or maintaining pace was mildly to moderately impaired, and adapting or managing one's health

3    was mildly to moderately impaired.  (AR 37-38.)  Buitrago further opined that Plaintiff was able

4    to understand simple instructions, to engage in simple, repetitive tasks, to maintain attention and

5    concentration, to work with others and have occasional contact with coworkers, staff, supervisors

6    and the general public, and should be able to make simple work-related decisions independently.

7    (AR 38.)  Buitrago opined that Plaintiff should be able to complete a six to eight-hour workday

8    and a five-day work week with these limitations.  (AR 38.)

9         In discussing the findings of San Pedro, Buitrago noted that most of the "screeners" were

10   self-administered and that someone who self-reports that level of intensity and chronicity of

11   symptoms are usually inpatients at state hospitals.  (AR 39-40.)  Plaintiff also reported every

12   possible symptom available for some of them.  (AR 40.)  Buitrago further noted that someone who

13   was afflicted with the amount of affective and anxiety -related and stress-related symptoms as

14   Plaintiff reported would not have been able to perform as he did on the WAIS-R test, perform at a

15   high average level on verbal comprehension, or perform an average level of IQ testing as Plaintiff

16   did.  (AR 40-41.)  Therefore, Buitrago determined that Plaintiff exaggerated when reporting his

17   symptoms to San Pedro.  (AR 40.)

18        The ALJ found that Buitrago's analysis and conclusions were based on a longitudinal

19   review of Plaintiff's entire mental health treatment from onset through the present.  (AR 21-22.)

20   The ALJ noted that Buitrago was the only mental health professional to objectively consider and

21   review Plaintiff's entire treatment history, and the ALJ therefore found that Buitrago's analysis

22   and conclusions were supported by and consistent with Plaintiff's medical records.  The ALJ thus

23   found Buitrago's opinions persuasive.  (AR 22.)  Plaintiff argues that the ALJ erred because his

24   analysis of Buitrago failed to provide sufficient details, but Plaintiff does not point out how

25   Buitrago's opinions were actually incorrect.  As noted above, "[t]he two 'most important factors

26   for determining the persuasiveness of medical opinions are consistency and supportability . . .'"

27   *V.W.*, 2020 WL 1505716 at *13.  Here, as the only mental health provider to review his entire

28   mental health treatment records, the ALJ did not err in finding Buitrago's opinions were well

7

1    supported.  Additionally, the ALJ did not err in finding Buitrago's opinions were consistent with

2    Plaintiff's medical records.

3         Plaintiff further argues that Buitrago did not have any evidentiary support for finding that

4    Plaintiff exaggerated his symptoms, but Buitrago noted that someone who was afflicted with the

5    amount of affective and anxiety-related and stress-related symptoms as Plaintiff reported would

6    not have been able to perform as he did on the WAIS-R test, perform at a high average level on

7    verbal comprehension, or perform an average level of IQ testing as Plaintiff did.  (AR 40-41.)  The

8    Court finds that Buitrago cited sufficient support for his findings and that the ALJ did not err in

9    finding Buitrago's opinions persuasive.

10        **2.    Campbell and Bradley.**

11        Non-examining medical consultants Campbell and Bradley similarly determined that

12   Plaintiff did not meet or equal the mental health disorders at listing 12.04 (Depressive, Bipolar,

13   and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), or 12.15 (Trauma

14   and Stressor – Related Disorders).  (AR 76-77, 89-90.)  Campbell and Bradley found that Plaintiff

15   was mildly limited in his ability to understand, remember or apply information and in his ability to

16   adapt or manage himself and that he was moderately impaired in his ability to interact with others

17   and to concentrate, persist or maintain pace.  (AR 77, 90.)

18        Campbell and Bradley listed Plaintiff's symptoms as understanding and memory

19   limitations, sustained concentration and persistence limitations, and social interaction limitations,

20   but they found that Plaintiff's statements about the intensity, persistence and functionally limiting

21   effects of these symptoms were not substantiated by the objective medical evidence due to

22   Plaintiff's lack of medication or other treatment and his substance abuse.  (AR 77-78, 91.)

23   Campbell and Bradley found that Plaintiff was not significantly limited in his ability to carry out

24   very short and simple instructions, to maintain attention and concentration for extended periods, to

25   perform activities within a schedule, maintain regular attendance, and be punctual within

26   customary tolerances, to sustain an ordinary routine without special supervision, to make simple

27   work-related decisions, to ask simple questions or request assistance, to accept instructions and

28   respond appropriately to criticism from supervisors, to get along with coworkers or peers without

United States District Court
Northern District of California

8

distracting them or exhibiting behavioral extremes, or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (AR 79-80, 92-93.)  Campbell and Bradley found that Plaintiff was moderately impaired in his ability to carry out detailed instructions, to work in coordination with or in proximity to others without being distracted by them, and to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to interact appropriately with the general public due to Plaintiff's PTSD, anxiety, and depression (AR 79-80, 92-93.)

In sum, Campbell and Bradley found that Plaintiff could remember, carry out, and complete routine tasks, maintain pace, persistence and concentration and complete a regular work schedule for simple-routine tasks, could interact appropriately with supervisors and co-workers, but not the public, and could interact and respond appropriately to normal changes and hazards encountered in the workplace.  (AR 80, 93.)  Campbell and Bradley both noted that, although the records contain evidence that Plaintiff has a severe mental health impairment, his lack of ongoing therapy indicates that he has had a fair response to medicine in the past and would seem to benefit from ongoing therapy treatment.  (AR 78, 91.)

The ALJ determined that both Campbell's and Bradley's opinions that Plaintiff has mild and moderate limitations were persuasive because they were consistent with Plaintiff's medical records and with Buitrago's opinions.  (AR 22.)  Plaintiff contends that the ALJ erred in his consideration of their opinions because the ALJ failed to provide sufficient details regarding his analysis, but the Court finds that the ALJ provided a sufficient explanation for finding Campbell's and Bradley's opinion's persuasive.

Plaintiff further argues that the ALJ failed to address a purported conflict between Campbell's and Bradley's opinions with Buitrago's opinions regarding Plaintiff's ability to interact with the general public.  However, Plaintiff fails to demonstrate that there is an actual conflict between Campbell and Bradley and Buitrago.  Campbell and Bradley found that Plaintiff was moderately, not markedly or extremely, limited in his ability to interact with the general public.  (AR 79-80, 92-93.)  Buitrago found that Plaintiff could have occasional contact with the

general public.  (AR 38.)  These opinions are not conflicting.  *See Fisher v. Saul*, 2021 WL 4459673, at *5 (M.D. Pa. June 28, 2021) (finding moderate limitations in social functioning was compatible with an RFC's limitation of occasional interaction with coworkers); *see also Hyer v. Colvin*, 2016 WL 5719683, at *12 (D. Del. Sept. 29, 2016) (listing cases upholding RFCs with "occasional" or "superficial" contact with supervisors, co-workers, or the public as adequate to reflect moderate limitations in social functioning).

### 3.     Schnurr.

Schnurr, a consultative examiner, evaluated Plaintiff on August 16, 2018.  (AR 406.) Schnurr reviewed ten pages of medical background for her consultative exam but did not specify which records she had reviewed.  (AR 406.)  Schnurr observed that Plaintiff arrived early for his appointment as she requested, was neat, clean and casually dressed, was coherent in speech and thought, and ambulated without gait or postural limitations.  Schnurr noted that Plaintiff provided the information in her report and that she thought the information was fairly accurate.  (AR 406.) Plaintiff reported to her that he suffered from depression, anxiety, PTSD, sleep problems and a mood disorder.  (AR 406.)  He further reported that he could perform his activities of daily living independently, denied any suicidal/homicidal thoughts, plans or intent to harm himself or others or destroy property, denied any psychiatric hospitalizations, reported that he was given psychiatric medications in 2015 for stabilization, and reported that he took Risperdal, Remeron, and Xanax in the past.  (AR 407.)  Schnurr observed that Plaintiff's affect was flat but appropriate to thought content.  (AR 407.)   Plaintiff reported that he smoked marijuana to help calm down but denied drinking alcohol.  (AR 407.)

Schnurr found that Plaintiff was alert and oriented times four, his speech was within normal limits, affect was anxious but appropriate to content, and mood was depressed.  (AR 408.) She found no evidence of psychosis or confusion during the evaluation but noted that his insight and judgment seemed limited.  (AR 408.)  Plaintiff walked, talked, and interacted appropriately during the evaluation and scored 29 out of 30 on a Mini-Mental State Exam ("MMSE").  (AR 408.)

Schnurr concluded that Plaintiff had a guarded ability to understand, remember and

1    carryout simple and complex instructions, may have a poor ability to maintain activities within a

2    schedule and maintain regular attendance, would have difficulty being persistent, concentrating

3    and paying attention, and that he would have difficulty completing a workday or workweek related

4    to interruptions from his depression, anxiety, PTSD, homelessness and fatigue.  (AR 409.)

5        The ALJ found that Schnurr was not persuasive because her opinions were inconsistent

6    with Plaintiff's treatment history, because it was not clear what treatment records Schnurr

7    reviewed, and because she appeared to rely entirely on Plaintiff's uncorroborated subjective

8    complaints.  (AR 22.)  The ALJ determined that her opinions were unsupported and inconsistent

9    with Plaintiff's medical records.  (*Id.*)

10       Plaintiff contends that the ALJ erred in his evaluation because Schnurr did review ten

11   pages of Plaintiff's medical records and conducted an MMSE, and therefore she did not rely

12   entirely on Plaintiff's uncorroborated subjective complaints.  However, while Schnurr did review

13   *some* records (an unspecified ten pages), she did not review his entire medical file or describe

14   what records she had reviewed.  Additionally, while portions of Plaintiff's reports to Schnurr are

15   corroborated, such as Plaintiff's criminal record and his prescription for medication in 2015 (three

16   years before his alleged onset date), there is no corroboration for the degree of impairments

17   Schnurr found.  Finally, although Schnurr did perform one test, Plaintiff's high score undermines,

18   rather than supports, her findings regarding his limitations.  The Court finds that the ALJ did not

19   err in determining that Schnurr's opinions were not persuasive because they were unsupported and

20   inconsistent with Plaintiff's medical records and with the opinions of Buitrago, Campbell and

21   Bradley.

22       **4.    San Pedro.**

23       San Pedro evaluated Plaintiff on June 5, 2019.  She observed that Plaintiff was adequately

24   dressed, was orientated to person, place and time, and his concentration was fair.  (AR 430.)  She

25   found Plaintiff's attitude was cooperative, had difficultly responding at times, appeared sleepy and

26   lethargic but became more alert when speaking on topics that interested him.  (AR 430.)

27   Plaintiff's mood was dysthymic and his affect was congruent.  (AR 430.)  She noted that

28   Plaintiff's articulation was poor, sometimes unintelligible, he used colloquial terms and

11

obscenities, he was tangential and his thought process was disorganized. (AR 430.) She found that Plaintiff had poor insight and judgment. (AR 430.)

San Pedro used the Wechsler Abbreviated Scale of Intelligence, Second Edition ("WASI-2") to evaluate Plaintiff's cognitive functioning in verbal and perceptual reasoning. (AR 430.) Plaintiff had raw scores of 20 in block design, 50 in vocabulary, 11 in matrix reasoning and 30 in similarities. His T scores were of 34 in block design, 75 in vocabulary, 30 in matrix reasoning and 46 in similarities. (AR 430.) San Pedro found that Plaintiff was in the high average for verbal comprehension, borderline for perceptual reasoning and that his full scale IQ was average. (AR 431.)

Plaintiff reported to San Pedro that he was experiencing auditory hallucinations, paranoia, extreme negative thoughts, abnormal psychomotor/agitative behavior, neurologic sensation/numbness, restricted affect, impaired neurocognition, and severe depression. (AR 432.) Plaintiff also reported to San Pedro that he engages in psychomotor behaviors such as counting, tapping, and scratching often. (AR 432.) Based on his reporting, San Pedro determined that Plaintiff was experiencing moderate to severe levels of psychosis and that Plaintiff suffered from mild hallucinatory behavior, moderate conceptual disorganization, moderately severe tension/nervousness, mild disorientation, severe depressive mood, and moderate unusual thought content. (AR 432.)

Also based on his reporting to San Pedro, Plaintiff scored 27 out of 27 on her Patient Health Questionnaire. He reported symptoms of feeling down, depressed, or hopeless, trouble falling asleep and sleeping too much, poor appetite, feeling tired with little energy, trouble concentrating on things, being restless, having negative thoughts all day with a history of thoughts of suicide. (AR 432.) Plaintiff further reported that these problems impact his daily functioning, making it extremely difficult for him to do work, take care of things at home, or get along with others. (AR 432.)

Based on his reporting, Plaintiff scored a 16 out of 21 on the Generalized Anxiety Disorder Scale ("GAD7"), indicating that he met the criteria for an anxiety disorder in the severe range. (AR 432.) Plaintiff reported severe symptoms including feeling nervous, anxious or on edge,

worrying about different things and not being able to control the worrying, trouble relaxing, feeling restless, becoming easily annoyed or irritable and feeling afraid. (AR 432-33.) He also reported being bothered by negative thoughts, having impulses to perform risky behaviors when anxious, and that his anxiety symptoms make it extremely difficult for him to work, take care of things at home, and get along with other people. (AR 433.)

Plaintiff reported to San Pedro that he has had both manic and severe depressive episodes, experienced some episodes of sleeplessness, increased energy, irritability, anger, anxiety, and fighting with others, and continues to have persistent mood symptoms. He also reported having a history of risking behaviors and suicidal thoughts and a family history of bipolar disorder in his brother and on his maternal side. (AR 433.)

Based on this information, San Pedro diagnosed Plaintiff with bipolar II disorder, recent episode depressed, with mixed features, mood psychotic features. (AR 433.) She determined that Plaintiff had functional limitations with work, as follows:

> Activities such as remembering and completing important skilled tasks and managing symptoms would be negatively affected. Client's symptoms make it difficult to remember instructions, procedures, rules and task lists, and complete tasks in an accurate and timely manner. Client's psychological symptoms would impact his attendance and greatly limit his performance. His psychosis, labile moods, negative thoughts, paranoia, irritability, depression, and anxiety will cause relationship problems with peers and authority, as he tends to be negative, emotional, prone to eloping, and is easily agitated.

(AR 434.) San Pedro recommended that Plaintiff receive meaningful mental health and behavioral counselling, as well as medication evaluation and monitoring. (AR 434.)

Buitrago testified that San Pedro determined that Plaintiff's intelligence was average, his verbal comprehension was high average, and that his perceptual reasoning was borderline, which covers nonverbal reasoning and visual and organizational skills. (AR 39-40.) Based on San Pedro's determination of Plaintiff's borderline perceptual reasoning, Buitrago found that completing complex tasks would be a little more difficult for him. (AR 40.) However, Buitrago noted that the remainder of the screeners San Pedro performed were based on Plaintiff's self-reporting to her. (AR 40.) Based on reading San Pedro's report and Plaintiff's other medical

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    records, Buitrago determined that Plaintiff had exaggerated his reported symptoms to San Pedro.

2    (AR 40.)  Buitrago also noted that someone who reported the amount of affective, anxiety, and

3    stress related symptoms as he did would not have been able to perform as he did on the WAIS-R.

4    (AR 40-41.)  Nor would Plaintiff have been able to perform at the high average level on verbal

5    comprehension or an average level of IQ testing.  (AR 41.)  Buitrago testified that there was not

6    any support in Plaintiff's medical records for the extreme functional limitations found by San

7    Pedro.  (AR 41.)

8         The ALJ noted Buitrago's finding that Plaintiff exaggerated his symptoms to San Pedro

9    and that there was no longitudinal history of any mental impairment of that degree of severity

10   either before or after San Pedro's report.  (AR 22.)  Moreover, the ALJ noted that Buitrago opined

11   that Plaintiff's degree of mental impairment found by San Pedro was not possible in the context of

12   this case.  (AR 22.)  In light of Buitrago's testimony, which the ALJ found was consistent with

13   Campbell's and Bradley's findings, the ALJ found that San Pedro's report was not persuasive.

14   (AR 22.)  The ALJ did not err in this finding.  A medical expert found that most of San Pedro's

15   assessments were based on Plaintiff's exaggerated self-reported symptoms which lacked support

16   in Plaintiff's medical records and were inconsistent with San Pedro's findings on Plaintiff's verbal

17   comprehension and level of intelligence.  Buitrago's and, in turn, the ALJ's conclusion that San

18   Pedro's opinions regarding Plaintiff's limitations were inconsistent with and unsupported by the

19   record were supported by substantial evidence.

20   **D.     Listed Impairments.**

21        Plaintiff contends that the ALJ failed to make sufficient findings as to whether the

22   combined effect of Plaintiff's impairments met or equaled the Listings 12.03, 12.04, 12.06, or

23   12.15.[2]  A petitioner who has an impairment that "meets or equals" a listed impairment is

24   presumed disabled.  *See Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013); 20 C.F.R. §

25

26   _____

27        [2] Plaintiff failed to identify these specific listings in his opening brief, but in his reply
     Plaintiff argues that he sufficiently identified these listings in an earlier, pre-hearing brief.  The
     Court need not determine whether Plaintiff waived his argument regarding the listings due to his
28   failure to identify and demonstrate how these specific listings were satisfied because, as discussed
     below, Plaintiff fails to demonstrate that he met the applicable criteria.

404.1520(a)(4)(iii).  To "equal" a listed impairment, the medical findings for the claimant must be "at least equal in severity and duration to the listed findings."  20 C.F.R. § 404.1526(a).  Plaintiff bears the burden to show that his impairments meet the requirements of a Listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "The mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Specifically, a claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  *Kennedy*, 738 F.3d at 1174 (internal citation omitted); *see also Burch*, 400 F.3d at 683 (finding plaintiff failed to "set forth any evidence which would support the diagnosis and findings of a listed impairment.").

For Listings 12.03, 12.04, 12.06, and 12.15, Plaintiff must demonstrate that he meets the A criteria and that he meets either the B or C criteria.  *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 1, § 12.00(A)(2).  To satisfy the paragraph C criteria, a plaintiff's "mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2."  *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 1, 12.00(A)(2)(c).  The C1 criteria are satisfied by evidence that a plaintiff relies, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial supports, or a highly structured setting, to diminish the symptoms and signs of the mental disorder.  *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 1, 12.00(G).  The C2 criteria is satisfied when the evidence shows that, despite a plaintiff's diminished symptoms and signs, plaintiff has achieved only marginal adjustment.  *Id.*  Plaintiff has provided no evidence to show that he satisfies the C criteria for those listings which have a paragraph C.  The sporadic treatment Plaintiff has received is insufficient to demonstrate treatment, therapy or support "on an ongoing basis."  *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 1, 12.00(G).  Therefore, Plaintiff fails to meet his burden as to the C criteria for Listings 12.03, 12.04, 12.06, and 12.15.

Nor does Plaintiff argue or demonstrate how he meets the B criteria for any of these listings.  The B criteria for these listings require an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):"

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  None of the opinions the ALJ found persuasive found Plaintiff had *any* extreme or marked limitations.  Thus, even if the ALJ erred by failing to make sufficient findings, any such error would have been harmless.

**E.      Plaintiff's Credibility Assessment.**

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick*, 157 F.3d at 722.  "The ALJ's findings, however, must be supported by specific, cogent reasons." *Id*.  In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir. 2009)).

First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citation omitted).  The ALJ is permitted to consider a number of factors including: (1) inconsistencies in the record concerning Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) Plaintiff's daily activities; and (4) observations of treating and examining physicians and other third parties. *See Smolen v. Chater*, 80 F.3d 1273,

1    1284 (9th Cir. 1996).  If the ALJ supports his credibility determination with substantial evidence

2    in the record, the Court may not "to second-guess that decision."  *Morgan v. Comm'r of the Soc.*

3    *Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

4             Without identifying or describing any particular testimony or symptoms, Plaintiff argues

5    that the ALJ failed to provide sufficient reasons for rejecting his testimony.  However, the ALJ

6    noted that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his

7    symptoms were inconsistent with his treatment history.  (AR 18-23.)  While Plaintiff argues that it

8    is improper to discredit a claimant for failing to obtain treatment for mental health, the Ninth

9    Circuit has long held that "the ALJ may properly rely on unexplained or inadequately explained

10   failure to seek treatment or to follow a prescribed course of treatment."  *Molina*, 674 F.3d at 1113

11   (internal quotation marks and citations omitted), *superseded on other grounds by* 20 C.F.R. §

12   404.1502(a).  Moreover, where, as here, there is no evidence that the lack of treatment is

13   attributable to the mental impairment, the ALJ may consider the failure to seek treatment for

14   mental impairments.  *Id.* at 1114.  Additionally, the ALJ further found that his alleged symptoms

15   were not supported by the medical evidence.  (AR 18-23.)  Accordingly, while the ALJ could have

16   provided more detail, the Court finds that the ALJ properly supported his credibility determination

17   with substantial evidence in the record.

18           Furthermore, even if the ALJ erred by failing to provide sufficiently detailed reasoning,

19   Plaintiff has not demonstrated how any such error would not be harmless.  Plaintiff must show that

20   any error "affected" his "'substantial rights,' which is to say, not merely . . .  procedural rights."

21   *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).  Notably, Plaintiff does not discuss his

22   alleged symptoms in his motion or cite to any specific medical records to support his alleged

23   symptoms.  Therefore, Plaintiff does not identify his testimony regarding specific symptoms that

24   the ALJ disregarded in error.  Because of this failure, Plaintiff does not show how the ALJ's

25   purported failure to consider to Plaintiff's testimony regarding his symptoms affected the

26   disability determination and does not meet his burden on appeal.

27   **F.      RFC Findings.**

28           Plaintiff argues that the ALJ erred in his RFC findings because he found that Plaintiff

United States District Court
Northern District of California

1   could work eight hours a day, ignored evidence that Plaintiff would have difficulty completing a

2   workday or workweek, and did not find that Plaintiff was restricted from *all* work with the general

3   public.  Buitrago opined that Plaintiff could work a six to eight-hour workday, which the ALJ

4   found persuasive.  Because eight hours is within the range provided by Buitrago, it is not clear

5   how the ALJ's finding that Plaintiff could work an eight-hour work day was an error.  With

6   respect to any difficulty in completing a workday or workweek, only Schnurr and San Pedro

7   opined that Plaintiff would have such difficulties.  As discussed above, the ALJ did not err in

8   rejecting their opinions.  Accordingly, any failure to include their opined limitations was not error

9   either.

10          With respect to interacting with the general public, for some reason, despite finding the

11   opinions of Buitrago, Campbell and Bradley persuasive, who each found Plaintiff had some

12   limitations interacting with the general public, the ALJ did not include any such limitations in

13   Plaintiff's RFC.  Nevertheless, it is not clear that the ALJ's failure to do so was error.  As the

14   Commissioner points out, unskilled work, a limitation the ALJ included in Plaintiff's RFC,

15   "ordinarily involve dealing primarily with objects, rather than with data or people. . . ."  Social

16   Security Ruling 85-15, 1985 WL 56857, *4; *see also Garcia v. Comm'r of Soc. Sec.*, 587 Fed.

17   Appx. 367, 370 (9th Cir. 2014) (unpublished) (finding ALJ's use of grids was appropriate because

18   plaintiff's "limited capacity to work with others . . . did not significantly erode the base of

19   unskilled light work with limited or no public contact for which [plaintiff] was otherwise

20   qualified."); *Huntsberry v. Berryhill*, 2017 WL 2438527, at *10 (N.D. Cal. June 6, 2017) (ALJ's

21   finding that plaintiff's nonexertional limitations had little or no effect on the occupational base of

22   unskilled work at all exertional levels was consistent with plaintiff's limitation to "no public

23   contact") (citing SSR 85-15, 1985 WL 56857, at *4).

24          Additionally, even if the ALJ did err, any such error would be harmless.  At the hearing,

25   the ALJ asked the VE about whether a person with Plaintiff's RFC and limited contact with

26   others.  The ALJ defined limited contact as interactions approximately one-third of the workday.

27   (AR 62-63.)  The Social Security Administration defines the term "occasionally" as "occurring

28   from very little up to one-third of the time."  Social Security Ruling 83-10, 1983 WL 31251, *5.

United States District Court
Northern District of California

1   The VE responded that she could provide examples of unskilled jobs which could be performed

2   with this limitation at the medium, light and sedentary exertion levels and proceeded to provide

3   three examples at the medium exertion level.  (AR 63-64.)  Therefore, the testimony supports the

4   ALJ's determination that Plaintiff was not disabled, even if he was limited in his interactions with

5   the general public.  Plaintiff failed to counter this testimony or otherwise demonstrate that any

6   error by the ALJ in light of this testimony was not harmless.  *See Ludwig v. Astrue*, 681 F.3d at

7   1054.[3]

8        Accordingly, the Court finds that the ALJ did not err in determining Plaintiff's RFC and

9   even if the ALJ did err, any such error would be harmless.

10  **G.      Vocational Expert's Testimony and Dictionary of Occupational Titles.**

11       Finally, Plaintiff argues the ALJ erred by failing to question the VE about any conflicts

12  between her testimony and the *Dictionary of Occupational Titles* ("DOT").  To assist in determining

13  whether a claimant can perform other work activities, an ALJ may rely on an impartial VE.  The VE

14  testifies about the jobs the claimant is capable of performing, despite his limitations.  *Gutierrez v.*

15  *Colvin,* 844 F.3d 804, 806-07 (9th Cir. 2016); *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012).

16  The DOT is a resource complied by the Department of Labor that details specific requirements for

17  different occupations, guiding the VE's analysis.  *Gutierrez,* 844 F.3d at 807.

18       An ALJ "has an affirmative responsibility to ask about any possible conflict between that

19  VE or VS [vocational specialist] evidence and information provided in the DOT."  SSR 00-4p; *see*

20  *also Gutierrez*, 844 F.3d at 807 ("If the expert's opinion that the applicant is able to work conflicts

21  with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the

22  expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.").

23  However, in order "[f]or a difference between an expert's testimony and the [DOT]'s listings to be

24

25       [3] The Court notes that Buitrago also found that Plaintiff should be limited only occasional
26  contact with coworkers, staff, supervisors.  (AR 38.)  In contrast, Campbell and Bradley both
    opined that Plaintiff could interact appropriately with supervisors and co-workers.  (AR 80, 93.)
27  Plaintiff waived any error regarding the ALJ's failure to include Buitrago's limitation to
    occasional contact with coworkers, staff and supervisors in his RFC by failing to assert this error.
28  Plaintiff only argued Plaintiff's penchant for profanity supported a limitation on his interactions
    with supervisors and coworkers.  (Dkt. No. 24 at p. 15.)

United States District Court
Northern District of California

characterized as a conflict, it must be obvious or apparent," which means that the VE's testimony "must be at odds with the [DOT]'s listing of job requirements that are essential, integral or expected." *Gutierrez*, 844 F.3d at 808; *see also Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) ("The conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further.") (citing *Gutierrez*, 844 F.3d at 808)).

Here, the Commissioner concedes that the ALJ failed to question the VE about any potential conflict with the DOT. However, the Commissioner argues that any error was merely procedural and harmless because Plaintiff failed to identify any actual conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1154, n. 19 (9th Cir. 2007) (noting procedural error in failing to question VE about conflicts is harmless if there is no conflict). On reply, Plaintiff argues that the ALJ included a limitation on high production quotas in a hypothetical posed to the VE. According to Plaintiff, there is a conflict because the DOT does not define production quotas. (Dkt. No. 31 at p. 19.) However, Plaintiff fails to identify any occupation addressed at the hearing which includes a production quota as an essential, integral or expected job requirement. Second, Plaintiff argues that the ALJ failed to inquire about the "no public contact" limitation imposed by Campbell and Bradley. But as discussed above, Campbell and Bradley did not include a limitation of *no* public contact. Therefore, Plaintiff failed to demonstrate that any procedural error was not harmless.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment. The Court shall issue a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED**.

Dated: November 30, 2021

_____

SALLIE KIM
United States Magistrate Judge